Case No. 243599, Robert Cox v. Total Quality Logistics, Incorporated, et al., or arguments not to exceed 15 minutes per side. Ms. Rosenbaum, you may proceed for the appellant. May it please the Court, Adina Rosenbaum on behalf of Appellant Robert Cox, I would like to reserve three minutes for rebuttal. Yes, thank you. Robert Cox's wife, Greta Cox, was killed in a truck crash that resulted from freight broker Total Quality Logistics' decision to hire a motor carrier with a history of safety violations. This case presents the question whether Mr. Cox's claim against Total Quality Logistics, based on its negligent hiring of the unsafe motor carrier, falls within an exception to preemption under the Federal Aviation Administration Authorization Act, the FQAA, that is generally known as the safety exception. The FQAA contains a preemption provision that preempts state laws related to the price, route, or service of a motor carrier or broker with respect to the transportation of property. It then contains the safety exception, which exempts from preemption under that preemption provision the safety regulatory authority of a state with respect to motor vehicles. Mr. Cox's claim falls squarely within that safety exception. Again, the language of the exception is that it exempts from preemption the safety regulatory authority of a state with respect to motor vehicles. Total Quality Logistics does not contest that the state law requirement at issue here is part of the state's safety regulatory authority. So the only question here is whether that authority is with respect to motor vehicles. It plainly is. Well, it can't be plainly because you've got two circuits against you, right? That is true. We think it plainly is. Don't say plainly. It's an open question in our circuit. It is an open question in this circuit. Again, not plain, but go ahead. We think if you look at that language, that the state law requirement here clearly falls within the language of the safety exception. The term with respect to motor vehicles in the F-Quad A, or with respect to in the F-Quad A, means concerns. And a state law requirement that a broker exercise reasonable care to hire a safe motor carrier, a motor carrier that will not put dangerous motor vehicles on the road, is a state law requirement that concerns motor vehicles. Why did the 7th and 11th disagree with you? They say it was too attenuated, this connection between a broker and the trucking company. What do you say to that? I have a number of responses to that. So the first is that the question isn't about the relationship between the broker and motor vehicles. The question is about the relationship between the state law at issue and motor vehicles. And here the purpose of imposing the state law requirement on brokers is to protect the public from the safety risks posed by motor vehicles. The state law requirement at issue is concerned about the safety risk posed by motor vehicles. It regulates the hiring of motor carriers to operate motor vehicles in order to reduce injuries and fatalities caused by motor vehicles. So it's concerned with the safety risks posed by motor vehicles on the road, and it gets at that safety issue by trying to ensure that unsafe motor vehicles will not be placed on the road with other drivers and passengers. Surely there are some limits. I mean, surely some claim could be too attenuated, right? And I know it's not really your job to argue this is close enough, but there has to be some limit. So maybe you could give us some idea of where you think the limits of attenuation lie. I think the question is whether the state law is genuinely responsive to safety concerns posed by motor vehicles, posed by having unsafe motor vehicles. Well, negligent hiring, of course, could be even more attenuated, right? So we have this broker, the claim is negligently hired, the carrier. But I suppose there could be more steps in the chain that would also involve negligent hiring, and at some point we'd have to cut the chain off, right? Well, I don't think it's about a chain. I think it's about whether the state law requirement is concerned with safety. So there's going to be many state law requirements that can be imposed on brokers that are not concerned with the safety with respect to motor vehicles. So, for example, a claim that a broker fraudulently advertised its services. That's not concerned with the safety risks posed by motor vehicles and would not fall within the safety exception. A claim that a broker hired a motor carrier that could not keep the cargo at the temperature at which it needed to be kept or could not deliver the cargo on time. That's not concerned with the safety risks posed by motor vehicles, so it would not fall within the safety exception. The state law issue here, though, the state law requirement that's being imposed on the brokers, which is a requirement to exercise reasonable care to hire a motor carrier that's not going to put dangerous motor vehicles on the road, that is a law that is concerned with the safety of motor vehicles, and therefore it's part of the safety regulatory authority of the state with respect to motor vehicles and falls within the safety exception. I think if we adopted that view that the carriers would be facing a patchwork of different state laws, I mean, that does seem to be what Congress was concerned about in the, I appreciate the F-quad-A formulation because we've been saying F-A-A-A-A-A, and yours is better. But Congress is plainly concerned about brokers not having to respond to a patchwork of state law. So can you speak to that concern? The F-quad-A was concerned about a patchwork of economic regulation, and what the safety exception shows is that it's not preempting all state laws no matter what their topic is. It's enabling there to be, for state laws to continue if those state laws are concerned with safety, and it's okay where there are being potentially different state laws that concern safety. I might also say that this is sort of basic negligence law in terms of having a standard of care, so I don't think we're going to end up with this vast patchwork of different state laws. But to the extent that there would be some difference, that is something that Congress was willing to have there be when it came to safety regulation. Because of the safety exception.  It recognized that states had a role to play when it comes to state safety, and it wanted to. Because conceptually the argument, as I understand it, is that it is the police power of the state over safety that is being preserved. Yes, it's the powers of the state to regulate when it comes to addressing the safety concerns posed by unsafe motor vehicles. And one way in which states have chosen to do that is by imposing a duty of care on brokers to take reasonable care to hire safe motor carriers to provide motor vehicle transportation. I think the other two circuits against you, the 7th and 11th, talked about, well, it has to relate to ownership or operation of the vehicle. And these brokers are neither ownership nor operation, so therefore is that part of the too attenuated argument, or is that a separate? Well, I think, again, that that's looking at the relationship between brokers and motor vehicles. And there's nothing attenuated here, even if you look at that relationship. Brokers hire motor carriers to provide motor vehicle transportation. So what they're brokers for is transportation by motor vehicle. But the question isn't about the relationship between brokers and motor vehicles. It's the relationship between the state law and motor vehicles and whether the state law is genuinely responsive to safety concerns respecting motor vehicles, whether it's responsive to concerns about there being unsafe motor vehicles on the road. And here the state law at issue is directly responsive to those concerns. The reason to impose a requirement on brokers to hire safe motor carriers, motor carriers that won't put dangerous motor vehicles on the road, is to protect the public from the dangers posed by there being unsafe motor vehicles on the road, motor vehicles that are unsafe either because of their condition or because of how they're being operated. You're saying this Golden Transit that was picked by this TQL was an unsafe motor carrier? It was a motor carrier with a history of safety violations, both driver violations and truck violations. Another way to think about your response to the Seventh Circuit's decision in Yee, the Seventh Circuit was very concerned that brokers themselves were not regulated in many parts of the statute. There were particular parts that related to brokers, and they're not mentioned here, for example. And your response would be like, I think that's just asking the wrong question. It's not who's regulated. It's like we shouldn't. Should we not worry at all about the fact that Congress attached certain duties to brokers, I guess is my question. Yes, I don't think that's relevant because the question here isn't whether Congress regulated brokers with regards to safety. It's whether Congress intended to immunize brokers from state obligations with regards to safety. And what the safety exception does is shows that Congress did not intend for the federal regulations with regards to safety to be exclusive. It recognized that there was a role for the states in this area, and that those state obligations and the state laws that were intended to protect the public from safety could be in addition to and different from the federal regulation with regards to safety. Is the discerning factor then the fact that on attenuation that this is related to transportation-based activities? I mean, that separates Dan's garage, for example, the one where it was a storage after. Is that part of the distinction that what you're looking to is who is engaging that transportation activity? I don't think the question is who is engaging in the activity. I think the question is, is the state law concerned with the safety risks posed by motor vehicles? In ours garage- In the course of transporting property. Well, to fall within the preemption provision in general, the state law is going to have to be related to the price-router service of a motor carrier or broker with the transportation of property. So then we're talking about the exception to that provision. And so to fall within the exception, the state law is going to have to be genuinely concerned with safety risks posed by motor vehicles. And that, with respect to motor vehicles, is doing real work. It's making sure that the safety risks at issue are the safety risks posed by motor vehicles, not other safety risks. So, for example, in the Supreme Court's case of Roe versus New Hampshire Motor Transport Association, that case involved laws regulating tobacco, which tobacco use is unhealthy. It's unsafe for users. That could be deemed part of the state's safety regulatory authority. But those laws did not concern the safety risks posed by motor vehicles. So it did not fall within the safety regulatory-within the safety exception, which applies to state laws concerned with the safety risks of motor vehicles. Okay, but very quickly, there could be some safety law that even you would concede would be too attenuated, right? So if the state didn't ban smoking, then the drivers of any vehicle are more likely than a nonsmoker to have a sudden cardiac arrest while driving. And so it could be arguably related to motor vehicles. How do we know that that's not – that doesn't apply here? In ours garage, the Supreme Court said that to fall within the safety regulatory authority, it has to be generally responsive to safety risks. And then with respect to motor vehicles, it's making clear that the risks that are at issue here are the safety risks posed by motor vehicles. So I don't think in your example – But this is just a classic problem in the law, right, that you can spin it out to – but for cause. At some point, a concept like proximate cause has to kick in, right, and cut off liability. But I don't think in your example that the reason to impose a ban on smoking would be because of the risks posed by a smoker who's driving a truck. That's not the purpose of that requirement. I see. So it's a purpose requirement rather than a relational requirement. And here the purpose of the requirement – it's what the law is responding to. And here the law is responding to the safety risks posed by motor vehicles. The reason to place this requirement on brokers to hire motor carriers who will not put dangerous motor vehicles on the road is to protect the public from the dangers posed by those unsafe motor vehicles. So it's part of the safety regulatory authority with respect to motor vehicles. Unless you have further questions. Thank you. We will have your rebuttal time. May it please the court. My name is Greg Goddard and I, along with my partner Joe Keller, represent Total Quality Logistics in this matter. Your Honors, it's important to point out at the outset that Mr. Cox concedes TQL is a broker, not a motor carrier, as they alleged in their complaint. So that's not an issue in this case. Nor is there an issue whether TQL as a broker falls under subsection C1, 14501C1. They are in fact preempted from all claims associated with the service of a motor carrier with respect to the transportation of property. The sole issue before the court is whether the state common law claims against brokers for negligent hiring of motor carriers falls under the exception 2A. It does not. The purpose of the F-Quad-4 Federal Aviation Administration Act was that Congress was concerned about state governance of interstate transportation of property. And Congress wanted to preempt that area of the law in order to avoid state regulations, state laws, from interfering with interstate transportation. The Roe case that counsel raised versus New Hampshire Motor Transport said that this preemption provision is to be read broadly. Indeed, the words related to service of a motor carrier is, under the Morales decision, a broad terminology. In this case, the exception provides paragraph 1, which is the broad preemption provision, shall not restrict the safety regulatory authority of a state with respect to motor vehicles. The Supreme Court in the Dan City Motor Vehicles or Dan City Cars case provided that the term with respect to means concerns and should be narrowly construed. Wait, where did they say? I was with you until you said the last part. I didn't read anything in Dan's that said concerns should be narrowly construed. I believe that that's in the Yee case. I misstated. You're right. The Yee case provided that Dan City Used Cars provided that the term concerns is synonymous with the terms with respect to. Right. And how do we know that? In ordinary English, do you think with respect to is different than related to? Yes. It could be there's a legal difference, but in ordinary English, you think when I say with respect to, I'm saying something narrower than related to? I believe that the courts believe that there is a difference between the two. I understand, Your Honor. And your authority for that is Yee? Is there anything else? Yes. The Yee court. I'm sorry? The Yee decision, yes, in the Seventh Circuit. Yeah. No, A court. I'm sorry? Well, you said the courts, like as if this is a universal. And what you really mean is the Seventh Circuit thing. Yes, Your Honor. And they might be right. They're good judges. Sure. I think the Yee court, and it's important to point out what Judge Gilman was asking a question about, and that is whether the connection is too attenuated. I think the answer is it's also that the point being that brokers were given broad preemption under C-1 to follow Mr. Cox's logic. Two lines down in the statutory scheme, they took it all away. Well, they didn't take it all away. Virtually, that's all a broker does is book a carrier. They book a carrier. And if the brokers are now going to be responsible for carriers causing automobile accidents, the preemption that they enjoyed under C-1 is gone. Brokers don't do anything else but book carriers. And so if they're given broad preemption with respect to motor carriers. That means if they negligently hire a carrier, why shouldn't that be a safety concern? Because that claim is preempted under C-1. Not safety concerns are not preempted. That's what's carved out. I believe the safety concerns, Your Honor, is more appropriately related to traffic laws, red lights on the back of a car, traffic control signals. That's safety with respect to motor vehicles. Safety is not a semi-truck rolling down the highway and striking the back of a car and killing the people who are in it. Certainly, that's a safety question. But the question in this case is whether the term with respect to motor vehicles relates to a broker hiring a motor carrier. All the broker does is hire the motor carrier. What about the motor carrier? I'm sorry. What about the motor carrier? Oh, I know. I just have one question. You do not dispute that the Supreme Court has held that a state's regulatory authority encompasses common law duties and standards of care. There's no dispute there, right? That's correct, Your Honor. Okay. That's good. Again, I'm sorry. The motor carrier itself could be liable under state law for negligent hiring of a driver, correct? Yes. Okay. So that must relate to safety. If I'm the motor carrier and I hire a guy who's got 20 DUIs, I could be liable. I don't have to be driving the car. I can be the employer. So why can't the broker who hires the company that it knows to hire only drunk drivers be liable? Why does that not relate to safety? Because Congress created a broad statutory scheme for overseeing safety of motor carriers and operators. It created the FMCSA, the Federal Motor Carrier Safety Administration. That agency is charged with overseeing the safety of motor carriers and operators. There are 40 discrete subparts in that congressional statutory scheme that provides for the administration overseeing operators and motor carriers. The operators and motor carriers are required to submit an application. I don't think we need to go through the list because that's a distinct issue from whether this federal law says, we have this categorical work that we do in this arena, and we preserve to each state as a separate sovereign their police power over safety. Isn't that the safety exception? I think the question comes down to congressional intent. What did Congress intend when it created this broad preemption by all accounts, broad preemption under C-1? I'm struggling a little bit with why we would be asking an intent question when the clear language of the statutory enactment says that it is creating a safety regulatory exemption that the states are authorized to exercise their own regulatory authority. With respect to motor vehicles. The question is whether what the brokers do when they hire motor carriers is with respect to motor vehicles. That's why the preemption applies. As you had said earlier, we're talking about the exception. Cox is not disputing that the preemption would apply. The key language of the preemption, as I see it, is in that section 14-501C, that no state can enact anything relating to price, route, or service. That's the key words. Those, I think, all sound to me like competitive things. In fact, it was in 1994 that Congress enacted this F-Quad-4. In the legislative history, it says that they were seeking to mitigate unreasonable burdens on interstate commerce and they wanted to remove impediments to the free flow of trade, traffic, and transportation of interstate commerce. I can understand that. What we're talking about here, though, those are all competitive things. That's what Congress wanted to encourage, competition. This business about hiring, though, unsafe carriers seems to be more to safety and doesn't relate to competition. So why shouldn't the safety exception apply here? Again, I think it comes back to what did the Congress intend? Congress intended to create the Federal Motor Carrier Safety Act that provides, among other things, that carriers are required to have motor vehicle insurance of $750,000. Congress didn't require brokers to have any insurance, even though Congress was well aware that brokers hire motor carriers. That's what they do. So if Congress intended under C-2A for states to be permitted to establish claims against brokers for motor carrier negligence, why would Congress require motor carriers to have insurance and not require brokers to have insurance? It's because Congress understood and knew brokers were not responsible under C-1 for motor carrier negligence. Indeed, it would be virtually impossible for brokers to oversee motor carrier safety. Well, one of the ways that a broker could oversee is look at the record that is publicly available on the entity that they are hiring. Here, the entity that they hired had a publicly available, frankly, dismal safety record. So why isn't that available information part of what a broker needs to look to, rather than saying the only thing I'm interested in as a broker is who offers me the lowest price, and then whatever happens with that entity is not my issue? It seems to me that what the safety exception is saying is, in fact, if you undertake common law negligence in failing to even look at the person you are employing to make the transportation of goods, which is a key to this, then you can be liable because the state has determined that it wants to enforce safety regulations so people are not routinely killed on the highways. If brokers were exposed to claims against them for motor carrier negligence, any time there was a claim that a motor carrier caused where an injury resulted from the motor carrier negligence, that would be the claim against the broker every time. No, the claim against you is not that limited. The claim against you is limited in the way that has to do with your employment. The claim against you is negligent hiring. Right. And that is all that the claim would be that would be enforced, is that rather than checking into whether this is, what do they call them, camouflage or double-running entities that are excluded on safety and then begin to run under a different name, whether you have looked at the public record and checked to see whether the entity that you are employing for the purpose of putting products in transportation has already been found to be negligent and a safety risk. If that was the law, every time a broker hired a motor carrier that resulted in an accident, the plaintiff would sue the broker. If Golden Transit had a Sterling A-plus record and then the driver in one all thing was drunk or didn't, you know, I don't think you'd have a claim for negligent hiring. That's just, hey, this was a negligent claim against the carrier. It wouldn't involve the broker if the Sterling record would not have allowed, would not have caused the broker to have reason to doubt the carrier. The FMCSA records show any sort of automobile accident, any sort of motor vehicle violation, any problem associated with a motor vehicle. So any time there was an accident, if the plaintiff looked at the motor carrier's record, they would find something about the motor carrier's record. No motor carrier is clean. No motor carrier is A-plus. So that's what would happen. The plaintiff would look at the carrier and say they had a speeding ticket. They had some sort of problem with their record and that would become the claim. And the result of all this would be the broker becomes the carrier insurer because whenever there's a claim against the carrier, the plaintiff would look at, would sue the broker, and there's a problem with almost every carrier. Does the case law show that? I mean, is it every time a carrier gets sued for negligence, the broker also gets sued? Yeah, that's a pretty common practice if you look at the cases. Yes, Your Honor, it is. And the problem, and part of the problem is if there's insufficient insurance, if the $750,000 is not sufficient, then the plaintiff looks for more money, as is what happened in this case. This case originated in federal court in Oklahoma. They sued the carrier and the operator, litigated the case, resolved the case, dismissed the carrier. I don't know how much insurance they had, but under law they're required to have $750,000. Under the contract with TQL, they're required to have $1 million in insurance. That's what Congress provided for, insurance, so carriers, so people who are injured are covered by that insurance. In this case, apparently the plaintiff has decided there wasn't enough insurance, so now they're looking for a claim against the broker, and that's the common practice. And so the broker becomes the potential insurer for motor carriers. And so the question becomes, is there an actual evidence of negligent hiring? And that's what's being litigated, right? Right. And it will be the claim in every case. I see your time is up. Thank you, Your Honor. Thank you. Just a few quick points. Toll Quality Logistics focused on sort of the deregulatory purpose of the preemption provision. But in Auer's garage, the Supreme Court explained that the deregulatory purpose of the preemption provision is not a reason to interpret through a deregulatory prism the aspects of the state regulatory process that Congress determined should not be preempted. And here it determined that state laws responsive to safety concerns respecting motor vehicles should not be preempted. What about your opposing counsel's point that is this going to make brokers an effective insurer of motor carriers? No, because brokers are only going to be liable when they breach their duty of care, when they did not use reasonable care. I think you could have that in every case where there's an accident by a motor carrier that's been hired by a broker because they could always find something in the safety record that would say, oh, this was not an A-plus carrier maybe. But the question is whether they're using reasonable care. It's a basic negligence standard of whether they were acting as a reasonable person would in terms of hiring the motor carrier. And I don't think that that will lead to there being liability in all cases. If they acted as a reasonable broker, then they won't be liable. Are, in fact, brokers often sued along with motor carriers when there's an accident, though? I don't think they're sued in every case. And then they're only going to be held liable if they, in fact, breached the duty of care. This also won't take away all protection of the preemption provision. Again, the safety exception only applies to state laws that are concerned with safety and the safety risks posed by motor vehicles. So there are many claims, as I mentioned in the opening, against brokers that will not fall within the safety exception. And finally, I want to touch on the insurance that Congress was concerned with whether motor carriers had sufficient insurance to pay the claims against them and required them to carry insurance. It doesn't show that Congress intended to immunize brokers against claims against them or from state laws and state law obligations with respect to safety that apply to the brokers. Here, the state law requirement underlying Mr. Cox's claims is responsive to concerns about the safety risks posed by motor vehicles. It therefore falls within the safety exception, and the claim is not preempted. Thank you. We thank you both for your briefing and your explanation of the interconnections among the statutes, its coverage, and its exception. The case will be taken under advisement, and there will be an opinion issued in due course.